UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MATTHEW KETSENBURG., | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:21-CV-220 RLW |
| | ) | |
| v. | ) | |
| | ) | |
| CHEXSYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss First Amended Complaint (ECF No. 23).  This matter is fully briefed and ready for disposition.  For the reasons stated herein, the Court grants, in part, and denies, in part, Defendant ChexSystems, Inc.'s Motion to Dismiss First Amended Complaint.

## BACKGROUND[1]

Plaintiff Joseph Matthew Ketsenburg ("Ketsenburg") alleges that, on June 28, 2018, his ex-girlfriend, Barbara Holcomb ("Holcomb"), fraudulently obtained a $300 online loan from CashNet USA ("CashNet"), using Ketsenburg's identity and financial information (First Amended Complaint ("FAC"), ECF No. 22, ¶ 28).  This loan was repaid through automatic deductions from Ketsenburg's bank account with First Midwest Bank ("FMB account").  (*Id*.)  The automatic deductions depleted Ketsenburg's FMB account, and the account was closed.  (*Id*., ¶¶ 60-62).  The ChexSystems report regarding Ketsenburg reflected the FMB account was closed.  (*Id*., ("the

---

[1] On a motion to dismiss, the Court must assume all plausible factual allegations in the Complaint as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-78; *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 890 (E.D. Mo. 2019).

information furnished by FMB to ChexSystems on September 11, 2018 alleged 'non-sufficient funds (NSF) activity'")).  Ketsenburg alleges he was aware in "mid-October 2018" that his FMB account was closed due to insufficient funds. At that time, Ketsenburg notified FMB regarding his alleged identity theft.  (*Id*., ¶ 67).  Law enforcement declined to bring charges against Holcomb for identity theft.  (*Id*., ¶¶ 66, 78, 84, 112, 121).

On February 1, 2019, Ketsenburg contacted ChexSystems and "identified every single inquiry upon his consumer report" that was inaccurate.  (*Id.*, ¶ 90).  On February 6, 2019, ChexSystems responded with a letter, "Identity Theft Summary of Rights" documents, and Ketsenburg's consumer report.  (*Id*., ¶¶ 90-94).  On February 11, 2019, ChexSystems provided written correspondence to Ketsenburg regarding the disputed information.  (*Id*., ¶¶ 99-101).  On February 15, 2019, Ketsenburg telephoned ChexSystems regarding the allegedly inaccurate information on his report, resulting from identity theft.  (*Id*., ¶¶ 102-104).

Ketsenburg states that he contacted all of the inquirers on his consumer report and contends that ChexSystems failed to block the inaccurate information.  (*Id*., ¶¶ 105-130).  For example, Ketsenburg notes that ChexSystems failed to mark information furnished by CashNet as "disputed" even though Ketsenburg provided CashNet with information that he had been the victim of identity theft.

In summary, Ketsenburg argues that ChexSystems failed to conduct a reasonable investigation into his disputes and failed to properly investigate his February 1, 2019 dispute regarding his alleged identity theft.  *See* FAC, ¶¶ 87, 89, 259.  Ketsenburg claims that ChexSystems did not maintain reasonable procedures to ensure the accuracy of the information on his credit report; did not conduct a reasonable investigation regarding his disputes; did not provide him with

information provided to it in connection with the disputes; and did not detail the procedures it used to conduct its reinvestigation. (*Id*., ¶¶ 258, 262).

## DISCUSSION

Ketsenburg purports to bring claims against ChexSystems under the Fair Credit Reporting Act (FCRA) based upon information reported, allegedly caused by identity theft. In enacting the FCRA, Congress recognized the vital role consumer reporting agencies (CRAs) have in assembling and evaluating consumer credit, as well as the need to insure that CRAs exercise their responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. 15 U.S.C. § 1681(a)(3)-(4). Under section 1681e(b) of the FCRA, a CRA, when preparing a credit report on a consumer, is required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer brings a dispute to the CRA regarding the completeness or accuracy of a credit report, the CRA is required by section 1681i(a) "within a reasonable period of time [to] reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant." 15 U.S.C. § 1681i(a). The FCRA addresses the duties of CRAs and of furnishers of information to those agencies as follows.

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with [15 U.S.C. § 1681i(a)(5)], before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). Within five days after a CRA "receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner

established with the person." 15 U.S.C. § 1681i(a)(2)(A). The notice must include all relevant information regarding the dispute that the CRA received from the consumer. *Id.* In addition, the CRA must promptly provide the furnisher of the information in dispute all relevant information about the dispute that the agency received from the consumer. 15 U.S.C. § 1681i(a)(2)(B). "After receiving notice of a dispute pursuant to § 1681i(a)(2), the provider of information must (A) conduct an investigation with respect to the disputed information, (B) review all relevant information provided by the CRA under § 1681i(a)(2), (C) report the results of the investigation to the CRA, and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. 15 U.S.C. § 1681s–2(b)(1)(A)–(D)." *Zetta v. NationsCredit Fin. Servs. Corp.*, 297 F. Supp. 2d 1196, 1202–03 (E.D. Mo. 2003). As part of its enforcement mechanism, the FCRA creates a private right of action against CRAs for negligent or willful violation of these or other duties imposed by this legislation. *Id.* §§ 1681n and o; *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082, 1088 (E.D. Mo. 2006).

### A.  Rule 8

ChexSystems first argues that Ketsenburg's FAC should be dismissed because it does not comply with Fed. R. Civ. P. 8.  Rule 8(a)(2) "requires a short and plain statement showing the pleader is entitled to relief, and that each allegation in the pleading be simple, concise, and direct." *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (unpublished per curiam); *Mariano v. Correct Care Sols., LLC*, No. 5:17-CV-05011, 2017 WL 3034358, at *1 (W.D. Ark. July 17, 2017). The primary purpose of Rule 8 is to allow the Court and the opposing party to understand whether a valid claim is alleged and, if so, what it is. *Id*. The complaint must be sufficiently clear so the Court or opposing party "is not required to keep sifting through it in search of what it is plaintiff asserts."

*Id.* (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994)); *City of Webster Groves, MO v. CCATT LLC,* No. 4:18-CV-1910 RLW, 2020 WL 4192447, at *3 (E.D. Mo. July 21, 2020)

ChexSystems argues that this Court should dismiss Ketsenburg's FAC because it is not short or plain, nor does it put ChexSystems on notice of the claims directed against it. (ECF No. 24 at 4 (citing Rule 8)). ChexSystems argues that the factual claims against ChexSystems are interspersed with allegations regarding Speedy Cash, Clarity, FactorTrust, Opportunity Financial, and CNU Online Holdings (CashNet), making it impossible for ChexSystems to properly respond. (*Id.*)

The Court finds that Ketsenburg's FAC satisfies the pleading standards of Rule 8. His pleadings could be more succinct and direct, but the Court finds that his FAC adequately alleges facts to support his claims under the FCRA. Ketsenburg outlined that ChexSystems continued reporting information about Ketsenburg and did not identify the information as "disputed" after he reported that the information was inaccurate. At this early stage of the litigation, and given Ketsenburg's pro se status, the Court finds that Ketsenburg's FAC satisfies Rule 8. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004) (pro se complaints are to be liberally construed, but must allege sufficient facts to support the claims).

### B. Rule 12(b)(6) standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007)). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

Here, ChexSystems argues that the Court should dismiss Ketsenburg's Section 1681i(a) claims because they are untimely under the appliable statute of limitations, do not allege inaccurate factual information, and fail to state a claim.

### C.  Section 1681i(a)

#### 1.  Statute of Limitations

Under the FCRA, "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability[.]" 15 U.S.C. § 1681(p). Ketsenburg filed his Complaint on February 22, 2021.  Thus, any Section 1681(a) violations that Ketsenburg discovered before February 22, 2019 are barred by the FCRA's statute of limitations.

ChexSystems notes that it mailed Ketsenburg a letter responding to his complaints and an "Identity Theft Summary of Rights" on February 6, 2019, and further responded on February 11, 2019.  (ECF No. 24 at 11 (citing FAC, ¶¶ 90-91, 99-101)).  ChexSystems contends that Ketsenburg would have discovered any alleged violation for ChexSystems' failure to conduct a reasonable investigation by February 6, 2019, which was more than two years before he filed this lawsuit.  As a result, ChexSystems claims that Ketsenburg's 15 U.S.C. § 1681(a) claims are untimely under 15 U.S.C. § 1681i.

Ketsenburg argues that "[a]ctual injury in this matter occurred on February 22, 2019, when Defendant issued a consumer report on Plaintiff to First State Community Bank."  (ECF No. 31 at

9).  Ketsenburg asserts "[t]he report did not identify a 'non-sufficient funds' report as disputed, nor was it blocked, despite Plaintiff's notice and dispute to the furnisher identifying this as identity theft."  (*Id*).  Ketsenburg further maintains that he could not have disputed any inquiries other than the BlueChip inquiry prior to February 22, 2019, because "he was not provided his consumer report until after that date."  (*Id*.)  Ketsenburg claims that his February 1, 2019 and February 15, 2019 telephone calls cannot be the relevant dates because ChexSystems continued to disclose "materially inaccurate information without that information being noted as 'disputed,' § 1681i(a)(1)(A) or blocked/deleted, § 1681c-2(a)[.]"  (ECF No. 44 at 2).  Ketsenburg argues that ChexSystems "must answer why it did not follow reasonable reinvestigation procedures and block/delete the identity theft related information within four business days of receiving Plaintiff's September 3, 2019 dispute."  (ECF No. 44 at 3 (citing FAC, ¶¶ 185, 194, 203, 212, 221)).  In sum, Ketsenburg argues that he "could not have discovered actionable liability against Defendant prior to February 22, 2019 because: a) Plaintiff had not received from Defendant any notice of the results of its reinvestigation pursuant to § 1681i(a)(6) prior to February 22, 2019; and, b) no inaccurate consumer reports were disclosed to any third-parties by Defendant between February 1, 2019 and February 21, 2019."  (ECF No. 44 at 5-6).

The Court holds that Ketsenburg's § 1681(a) claims are time-barred.  As stated, Ketsenburg argues that the statute of limitations began to run no earlier than February 22, 2019, when he received a Notice of Adverse Action from a third party.  (ECF No. 44 at 1-2).  That date would be relevant if Ketsenburg filed a Section 1681i(c) claim regarding notifications of consumer dispute in subsequent consumer reports, but Ketsenburg filed a claim under Section 1681i(a), regarding liability for reinvestigations of disputed information.  "Because the FCRA's limitations period begins to run upon 'discovery of ... a violation,' the issue of timeliness becomes a question of when

exactly Plaintiff discovered the section … 1681i(a)(2) violation[].” *Bailey v. Equifax Credit Info. Servs., Inc.*, No. 114CV00797MHCJCF, 2016 WL 11540113, at *13 (N.D. Ga. Nov. 28, 2016) (citing 15 U.S.C. § 1681p).  Thus, “the weight of authority points to the conclusion that a claim under section 1681i(a)(2) begins to accrue once a consumer receives the results of the reinvestigation mandated by the statute[.]” *Bailey*, 2016 WL 11540113, at *16 (citing cases).

As stated, ChexSystems mailed Ketsenburg a letter responding to his complaints and an “Identity Theft Summary of Rights” on February 6, 2019, and further responded on February 11, 2019.  (ECF No. 24 at 11 (citing FAC, ¶¶ 90-91, 99-101)).  ChexSystems had five days to turn over the results of their reinvestigations of Ketsenburg's account under the statutory timeline. *See* 15 U.S.C. § 1681i(a)(6). At the end of that timeline, Ketsenburg “would have either received the results of the investigation, which may result in a violation of the subsection, or fail to receive any results, which would certainly violate the subsection.” *Bailey*, 2016 WL 11540113, at *16.  Either way, Ketsenburg would have discovered a potential violation of section 1681i(a)(2) “[a]t that moment.” *Verkuilen v. Bus. Info. Grp., Inc.*, No. 14-C-400, 2016 WL 1677190, at *3 (E.D. Wis. Apr. 26, 2016). Thus, the latest of these dates would be more than two years before he filed this lawsuit. Thus, Ketsenburg's section 1681i(a)(2) claims are time-barred under the FCRA's statute of limitations.  The Court grants ChexSystems's motion to dismiss as to Ketsenburg's failure to reinvestigate claims brought under 15 U.S.C. § 1681i(a)(2). *See Bailey*, 2016 WL 11540113, at *16.

### 2.  Inaccuracy

A section 1681i(a) claim “is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that

provide a more accurate representation about a particular entry." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "Therefore, accurate reporting by a credit reporting agency is a complete defense to [a] … 1681i(a) claim." *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006).

Here, ChexSystems contends its reporting of Ketsenburg's FMB closed account was accurate, "even if Plaintiff would have preferred that the financial institution not close the account for non-sufficient funds." (ECF No. 24 at 7). ChexSystems moves this Court to dismiss the Complaint because the accuracy of the report is a complete defense to Ketsenburg's claims under §1681i.

Ketsenburg contends that the Eighth Circuit has rejected ChexSystems' "technical accuracy" defense and instead requires "a thorough examination of whether a consumer report is maximally accurate with respect to the individual who is the subject of the report." (ECF No. 44 at 7 (citing *Wilson v. Rental Rsch. Servs., Inc.*, 165 F.3d 642, 645, n.3 (8th Cir.1999)).[2] Ketsenburg argues that his "consumer report disclosed to FSCB [First State Community Bank] on February 22, 2019 is inaccurate because the FMB entry of 'nonsufficient funds' [was] not blocked, deleted, or identified as 'disputed.' [ChexSystems] is liable because a reasonable reinvestigation would have resulted in that 'nonsufficient funds' entry being blocked, deleted, or at a minimum, noted as 'disputed.'" (ECF No. 44 at 9). Ketsenburg claims ChexSystems "is liable because it disseminated

---

[2] The Eighth Circuit granted rehearing and vacated the *Wilson* opinion *See* 206 F.3d 810 (8th Cir. 2000 (en banc)). However, the district court's opinion was later affirmed. *Wilson v. Rental Rsch. Servs., Inc.*, 206 F.3d 810 (8th Cir. 2000).

that inaccurate consumer report to a third-party (FSCB) on February 22, 2019."  (ECF No. 44 at 9).

The Court finds that the information ChexSystems provided regarding the closure of Ketsenburg's bank account with FMB was accurate and, therefore, provides a complete defense for liability under Section 1681i.  Ketsenburg alleges that his FMB account was closed for "non-sufficient funds (NSF) activity" as "the result of automated deductions from Plaintiff's FMB account in connection with repayment of the loan that was obtained by acts of identity theft." (FAC, ¶¶ 28, 60, 61).   Thus, ChexSystems' report regarding the reason for the closure of Ketsenburg's account is accurate.   The Court dismisses Ketsenburg's Section 1681i(a) claim because he has not demonstrated that the information reported was inaccurate.  *Murphy*, 456 F. Supp. 2d at 1089; *Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1012 (D. Minn. 2013) ("a claim under § 1681i requires a showing that the information in the credit file was inaccurate").

### 3.  Failure to State a Claim

In his FAC, Ketsenburg attempts to state a claim under 1681i(a)(6)(B) and (a)(7) concerning the notice ChexSystems provided following the completion of its reinvestigation of the dispute regarding Ketsenburg's file.  (ECF No. 24 at 7 (FAC at 5, ¶ IV)). Pursuant to § 1681i(a), a CRA conducts a reasonable reinvestigation by "'notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer.'" *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) (quoting *Reed v. Experian Info. Solutions, Inc.,* 321 F.Supp.2d 1109, 1113 (D. Minn. 2004) (citing 15 U.S.C. § 1681i(a)(1)(A, B))); *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1235–36 (D. Minn. 2013). Ketsenburg alleges that, on February 1, 2019, he telephoned ChexSystems, informing it that the BlueChip Financial inquiry on his consumer report "was

inaccurate and the result of identity theft," and he identified "every single inquiry" that was inaccurate.  (FAC, ¶¶ 87, 89).

ChexSystems contends that Ketsenburg fails to state a plausible claim for violation of § 1681i(a) of the FCRA.  ChexSystems argues that Ketsenburg failed to allege any facts in support of his claim that ChexSystems failed to reinvestigate the dispute after Ketsenburg notified ChexSystems that he disputed his file's accuracy. (ECF No. 24 at 7).  ChexSystems acknowledges that Ketsenburg notified ChexSystems of alleged inaccuracies on his report due to identity theft. (ECF No. 24 at 7-8 (citing FAC, ¶¶ 87, 89)).  Even if this allegation is construed as satisfying the first two pleading elements of 1681i(a), ChexSystems contends that Ketsenburg does not identify how or if ChexSystems failed to reinvestigate the allegedly disputed information.  (ECF No. 24 at 8).  Specifically, ChexSystems contends that Ketsenburg does not allege any facts regarding ChexSystems' reinvestigation of BlueChip Financial, as well as every other inquiry as to Ketsenburg.  (ECF No. 24 at 8 (citing FAC, ¶¶ 234, 237)).   ChexSystems maintains that Ketsenburg's FAC contains only conclusory allegations and does not include any facts demonstrating that ChexSystems' reinvestigation was unreasonable.  (ECF No. 24 at 8-9).  Finally, ChexSystems states that it was not required to change its reporting simply based upon Ketsenburg's statement that the information reported was faulty, if ChexSystems received verification of the information from its furnishers.  (ECF No. 24 at 9-10).

In response, Ketsenburg argues that he "plainly stated that at no point after being notified of the disputes did the Defendant identify on Plaintiff's consumer report the information as 'disputed[.]'" (ECF No. 31 at 6 (citing FAC, ¶¶ 155, 156, 166, 175, 184, 193, 202, 211, 220, 229)). Ketsenburg contends that marking disputed information on a consumer report as "disputed" is part of the reinvestigation process under Section 1681i(a). Ketsenburg argues that ChexSystems'

failure to mark the information as "disputed" demonstrates that "Defendant failed to conduct a reasonable investigation." (ECF No. 31 at 6-7).

Although this is a close case, the Court holds that Ketsenburg's Section 1681i claim fails as a matter of law because he has not alleged any facts to support his claim that ChexSystems performed an inadequate reinvestigation under the FCRA. As noted in *Paul v. Experian Info. Sols., Inc.*, ChexSystems's duty to reinvestigate is limited:

> Paul repeatedly refers to Experian's duty to investigate.
> This assertion misstates the statute and conflates a CRA's obligation to reinvestigate and a furnisher's obligation to investigate. *Compare* 15 U.S.C. § 1681i(a) (CRA must conduct reinvestigation) *with id.* § 1681s–2(a)(8)(E) (furnisher must conduct investigation). "[T]he furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to 're investigate'...." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1156–57 (9th Cir.2009). ….

793 F. Supp. 2d at 1103. Here, ChexSystems provided Ketsenburg with a summary of its findings, which the Court has already determined were accurate under the statute. "No language in the statute requires a CRA to forward documents to data furnishers to satisfy its obligation. " *Paul*, 793 F. Supp. 2d at 1103. (citing Fed. Trade Comm'n, *Report to Congress on the Fair Credit Reporting Act Dispute Process* 34 (Aug. 2006) (CRA practice of summarizing documents submitted by consumers is sufficient in most cases); *see also Morris v. Trans Union LLC,* 420 F.Supp.2d 733, 753 (S.D.Tex.2006) (defendant not required to include copy of plaintiff's dispute letter to satisfy "all relevant information requirement"); *Davis v. Equifax Info. Servs. LLC,* 346 F.Supp.2d 1164, 1176 (N.D.Ala.2004) (rejecting plaintiff's argument that "mere electronic communication is insufficient to comply with § 1681i(a)(2)(A)"). Thus, the Court finds that Ketsenburg's FAC fails to allege any facts to support his claim that ChexSystems's reinvestigation

was deficient as a matter of law.  The Court grants ChexSystems's Motion to Dismiss Ketsenburg's

Section 1681i claim on this basis, as well.

### D.  Section 1681g claim

Ketsenburg also purports to allege a claim under 15 U.S.C.§ 1681g.  (FAC, ¶ 261)

("Plaintiff avers that at no time has Defendant identified the information furnished to Defendant

in connection with his disputes and the sources of that information").  Section 1681g provides, in

relevant part:

> (a) Information on file; sources; report recipients:  Every consumer reporting
> agency shall, upon request, and subject to section 1681h(a)(1) of this title,
> clearly and accurately disclose to the consumer:
>
> (1) All information in the consumer's file at the time of the request …
> (2) The sources of the information …
>
> ***
>
> (e) For the purpose of documenting fraudulent transactions resulting from identity
> theft, not later than 30 days after the date of receipt of a request from a victim, [a
> CRA], shall provide a copy of application and business transaction records in the
> control of the business entity, whether maintained by the business entity or by
> another person on behalf of the business entity, evidencing any transaction alleged
> to be a result of identity theft to (A) the victim;[3]

ChexSystems contends that Ketsenburg does not allege all of the elements of a § 1681g(a)

claim.  Specifically, ChexSystems notes Ketsenburg does not allege that he requested information

from his consumer file, which would trigger ChexSystems's obligations.  (ECF No. 24 at 10-11).

Moreover, even if Ketsenburg did properly request his consumer file, ChexSystems argues that

Ketsenburg did not allege that ChexSystems failed to comply with its obligations under the FCRA.

In the FACT, Ketsenburg alleges that ChexSystems did not provide him with "every item of

---

[3] Ketsenburg references Section 1681g(e) in his Surresponse  (ECF No. 44 at 11).

information furnished in connection with the transactions appearing on his consumer report."
(FAC, ¶ 251).  However, ChexSystems contends that Ketsenburg's definition of a "consumer file"
is overly expansive and not in line with those adopted by the courts.  *See* ECF No. 24 at 11 (citing
*Danehy v. Experian Info. Sol., Inc.*, No. 5:18-CV-17-FL, 2018 WL 4623647, at *3 (E.D.N.C. Sept.
26, 2018) ("the prevailing interpretation among other circuits that 'file,' as used in 15 U.S.C. §
1681g(a)(1), means 'all information on the consumer that is recorded and retained by a consumer
reporting agency that might be furnished, or has been furnished, in a consumer report on that
consumer'") (internal citation omitted); *Tailford v. Experian Info. Sols., Inc.*, No.
SACV1902191JVSKESX, 2020 WL 2464797, at *5 (C.D. Cal. May 12, 2020) ("definition of a
consumer file 'does not open the door for every shred of information to be included in a consumer
disclosure simply because there is some slight chance it might someday be in a consumer report'")
(internal citation omitted).   Thus, ChexSystems argues that Ketsenburg's allegation that
ChexSystems failed to provide him with "every item of information furnished in connection with
the transactions appearing on his consumer report" does not state a claim under § 1681g.

Ketsenburg agrees that a customer seeking his consumer report must make his request
using the word "file" from a CRA.  (ECF No. 31 at 9).  Ketsenburg, however, contends that he has
not requested his "file." (*Id*. (citing § 1681g(a)(1)). Instead, Ketsenburg argues he requested
"sources of information" found in his file.  (*Id*. (citing § 1681g(a)(2)).  He requested a description
of the procedures used to investigate his disputes (§ 1681i(a)(6)(B)(iii) and § 1681i(a)(7)) and a
copy of the "business transaction records" evidencing any transaction alleged to be the result of
identity theft (§ 1681g(e))(1).  (*Id*.)  Ketsenburg states that "[n]one of these disclosures constitute
part of Plaintiff's 'file.'" (*Id*.)  Ketsenburg argues that ChexSystems is using the word "file" to

"circumvent the statutory requirements and disclosures of 'other types of information'" as required under the FCRA."  (ECF No. 31 at 10).

"[T]he disclosure and summary-of-rights requirements are designed to protect consumers' interests in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021).  For a claim under section 1681g(a)(1), "[a] consumer's file includes 'all information on the consumer that is recorded and retained by a [consumer reporting agency] that might be furnished, or has been furnished, in a consumer report on that consumer.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d Cir. 2010)).  The Court, however, agrees Ketsenburg's claim under Section 1681g(a)(2) regarding requests for "information furnished to Defendant in connection with his disputes and the sources of that information" is not so limited.  "A liberal reading of Section 1681g(a)(2) allows for a definition of 'sources' …, which does not limit Defendant's, nor any CRA's, 'sources' to only the original source of information." *Dennis v. Trans Union, LLC*, No. CIV.A. 14-2865, 2014 WL 5325231, at *7 (E.D. Pa. Oct. 20, 2014).  The Court holds that ChexSystems's proposed limitations on the information provided to Ketsenburg "are too narrow in light of the 'remedial scheme' Congress intended[.]" *Dennis*, 2014 WL 5325231, at *7; *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (The consumer oriented objectives support a "liberal construction of the FCRA" and "any interpretation of this remedial statute must reflect those objectives") (internal quotations and citations omitted).   As a result, the Court denies ChexSystems' motion to dismiss Ketsenburg's claim under Section 1681g.

**E.  Section 1681c-1 Claim**

Ketsenburg purports to bring a claim under § 1681c-1(a)(2)(B) of the FCRA.  Section

1681c-1(a)(2) provides:

(2) Access to free reports

In any case in which a consumer reporting agency includes a fraud alert in the file
of a consumer pursuant to this subsection, the consumer reporting agency shall—

(A) disclose to the consumer that the consumer may request a free copy of the file
of the consumer pursuant to section 1681j(d) of this title; and

(B) provide to the consumer all disclosures required to be made under section
1681g of this title, without charge to the consumer, not later than 3 business days
after any request described in subparagraph (A).

ChexSystems argues that Ketsenburg's FAC does not allege any of the necessary elements

to bring a claim under 15 U.S.C. § 1681c-1(a)(2)(B).  First, ChexSystems argues that this section

of the statute applies to "a case in which a consumer reporting agency includes a fraud alert in the

file of a consumer" 15 U.S.C. § 1681c-1(a)(2), but the FAC does not include an allegation that

ChexSystems included a fraud alert in Ketsenburg's file.  (ECF No. 24 at 12).  Second,

ChexSystems contends Ketsenburg did not plead that he "request[ed] a free copy of the file of the

consumer", a requirement for liability under Section 1681C-1(a)(2)(A).  Further, ChexSystems

contends the FAC fails to allege that ChexSystems did not provide "disclosures required to be

made under section 1681g of this title, without charge to the consumer, not later than 3 business

days" after the request.  (ECF No. 24 at 13 (citing 15 U.S.C. § 1681C-1(a)(2)(B)).

Ketsenburg argues that he requested a "fraud alert" and, therefore, ChexSystems was

required to make the .§ 1681g disclosures pursuant to .§ 1681c-1(a)(2)(B).  (ECF No. 44 at 10).

Ketsenburg states that "[t]he statutory provisions outlined in § 1681c-1(a)(2) require, when a fraud

alert has been place in the file of a consumer, that the CRA provide all disclosures required under

§ 1681g, without any request by the consumer, but not later than three business days after the consumer has requested the fraud alert."  (ECF No. 44 at 10).   Ketsenburg concedes that he included his allegation that he requested a fraud alert in his original complaint (ECF No. 1) and not his FAC and that the original complaint is the controlling document.  Nevertheless, Ketsenburg maintains that the Court should still consider his allegation that he requested a fraud alert because ChexSystems "relies on all filings of record" in its Motion to Dismiss (ECF No. 23, ¶ 3), which includes his original complaint.  (ECF No. 44 at 10-11).

The Eighth Circuit has repeatedly cautioned that an amended complaint replaces the original complaint, and claims that are not realleged are deemed abandoned.  *See e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005). Since Ketsenburg did not allege in his FAC that ChexSystems "include[d] a fraud alert" in Ketsenburg's file, the Court grants ChexSystems' Motion to Dismiss on this claim. *See* ECF No. 24 at 24 (citing 15 U.S.C. § 1681c-1(a)(2).  Moreover, even if Ketsenburg had requested a fraud alert, the Court finds that Ketsenburg did not allege that he requested a free copy of his consumer file, s*ee* 15 U.S.C. § 1681c-1(a)(2)(A), nor does Ketsenburg allege that ChexSystems did not provide "disclosures required to be made under Section 1681g of this title, without charge to the consumer, not later than 3 business days" after the request.  *See* 15 U.S.C. § 1681c-1(a)(2)(B). The Court dismisses Ketsenburg's claims under §1681c-1(a)(2) for failure to state a claim on these bases as well.

### F.  Negligence Claim

15 U.S.C. § 1681o provides:

Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

ChexSystems argues that Ketsenburg has not shown that he was harmed or that ChexSystems was a "causal factor" in damages suffered by Ketsenburg.  (ECF No. 24 at 13 (citing *Fahey v. Experian Info. Sols., Inc.*, 571 F. Supp. 2d 1082, 1089 (E.D. Mo. 2008)).  ChexSystems notes that Ketsenburg's FAC "is almost entirely devoid of allegations related to damages."  (ECF No. 24 at 13).  Ketsenburg states that he was assessed at $9.95 monthly fee for opening and maintaining a checking account.  (FAC, ¶¶ 118-120).  ChexSystems, however, contends that Ketsenburg fails to state a claim under § 1681o because he has not alleged that he would not have had to pay the $9.95 monthly fee absent ChexSystems' allegedly erroneous report. (ECF No. 24 at 13).

"In order to maintain a claim for negligent noncompliance, a plaintiff must show 'actual damages sustained by a consumer as a result of the failure.'" *Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1013 (D. Minn. 2013) (citing 15 U.S.C. § 1681o (a)(1); *see also Hauser v. Equifax, Inc.,* 602 F.2d 811, 817 (8th Cir.1979) (affirming a directed verdict in favor of Equifax where "there was insufficient evidence to support of finding of willful noncompliance," and "there was no evidence of damage" as a result of Equifax's failure to comply with the FCRA); *see also Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'").  Under the FCRA, Ketsenburg may recover for any "actual damages" that he sustained as a result of ChexSystems's negligent noncompliance with the requirements of the FCRA. 15 U.S.C. § 1681o (a)(1). Mental pain and anxiety can constitute actual

- 18 -

damages. *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013) (citing *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 834–35 (8th Cir.1976)).

Here, Ketsenburg alleges "[a]ctual damages include money spent on copying services, postal fees, lost time from work, missed wage earning opportunities, fees associated with third party assistance, plus emotional distress and mental anguish." (ECF No. 22 at 6). At this early stage of the litigation, the Court finds Ketsenburg states a claim under Section 1681o. Although Ketsenburg will have to show evidence that these damages are "genuine," *see Taylor*, 710 F.3d at 828, Ketsenburg's allegations that he suffered such losses as a result of ChexSystems's negligence are sufficient at the motion to dismiss stage.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss First Amended Complaint (ECF No. 23) is **GRANTED**, in part, and **DENIED,** in part. Defendant's Motion to Dismiss, as to Plaintiff's claims under 15 U.S.C. §§ 1681g, 1681o, is **DENIED.** Defendant's Motion to Dismiss is **GRANTED** in all other respects, as discussed above.

.

Dated this 10th day of February, 2022.


*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**